IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ONIX MARCANO-BETANCOURT, et al    *
                                                                *
     Plaintiffs                              *
                                                                 *
        v.                                     *        **Civil No. 06-1400 (SEC)**
                                                                  *
COMMONWEALTH OF PUERTO RICO, *
et al                                                          *
                                                                  *
     Defendants                         *
                                                                  *
------------------------------------------------------- *

**OPINION AND ORDER**

Pending before the Court are Co-defendants Pedro Toledo's, Juan C. Mariani's and David Rivera's motions to dismiss for failure to state a claim upon which relief can be granted (Dockets ## 23 & 59), and Plaintiff's oppositions thereto (see, Dockets ## 30 & 60). After reviewing the filings and the applicable law, Pedro Toledo's motion to dismiss will be **GRANTED** and Juan C. Mariani's and David Rivera's like motion will be **DENIED.**

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

In assessing whether dismissal for failure to state a claim is appropriate, the court must take "plaintiffs' well-pleaded facts as true and [indulge] all reasonable inferences therefrom to their behoof." Buck v. American Airlines, Inc., 476 F. 3d 29, 32 (1st Cir. 2007). "In conducting that tamisage, however, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Id., at 33; see also, Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Moreover, "[w]hile plaintiffs are not held to higher pleading standards in § 1983 actions, they must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutiérrez v. Molina, et al., – F 3d –, available at 2007 WL 1765550, at *7 (1st Cir. 2007). Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-

**Civil Case No. 06-1400(SEC)** 2

Ortíz v. Margo Caribe, Inc., -- F 3d --, 2007 WL 1732883 (1st Cir. 2007).

### Factual and Procedural Background

Plaintiffs filed the above captioned complaint seeking redress for the damages suffered by Onix Marcano (hereinafter Onix) as a result of the excessive force employed by Felipe Rosado, a police officer from the Bayamón Police Department, during Mr. Marcano's arrest, in violation of his constitutional rights under the Fourth Amendment to the United States Constitution. The complaint is premised on 42 U.S.C.A. § 1983, and Article 1802 of the Puerto Rico Civil Code. Mr. Marcano's co-plaintiffs are his father, Ramón L. Marcano (Marcano) and his girlfriend, Damaris Matos (Matos), who seek relief for emotional damages. Plaintiffs sued Felipe Rosado (hereinafter Rosado), the alleged aggressor; Juan C. Mariani (Mariani), his partner; David Rivera (Rivera), the aggressor's supervisor; and Pedro Toledo, the Police Department Superintendent. Plaintiffs allege that Mariani is liable for their damages because he was present at the time of Onix's arrest, at which point Rosado used excessive force against Onix, and still did nothing to stop him. They also sue Rivera because he was in charge of supervising Rosado and Mariani, and, being aware of their illegal conduct, did not stop the aggression. Finally, Plaintiff sues Toledo because he failed to create adequate training and supervising policies to prevent these events from happening.

The appearing co-defendants, Mariani, Toledo, and Rivera move to dismiss the complaint as to them on the following grounds: Mariani and Rivera argue that there is no *respondeat* superior liability under section 1983, that Plaintiffs have failed to present a viable 1983 claim, and that they are entitled to qualified immunity; Toledo raises these same defenses plus a lack of standing argument as to Marcano and Matos. We will discuss the merits of these arguments, as they relate to each defendant, below.

Because the pending motions are motions to dismiss, we take as true all well pleaded facts contained in the complaint and draw all reasonable inferences in Plaintiffs' favor. We start with a brief recount of the facts as they are set forth in the complaint.

**Civil Case No. 06-1400(SEC)** 3

On October 21, 2005 Co-Plaintiff Onix was detained by Agent Rosado, an officer of the Bayamón police station, for some violations to the traffic laws.[1] Along with Rosado was agent Mariani, Rosado's confrère. After Onix was detained, Rosado violently took him out of the car, threw him against the car and handcuffed him. Mariani did nothing to stop Rosado's violent behavior. Other policemen, who are not parties to this complaint, took Marcano in a car to the Toa Alta police station because Rosado and Mariani were driving motorcycles. Once at the Toa Alta police station, Rosado started interviewing Onix, in the presence of his girlfriend, Matos. At some point during the interview, Rosado struck Onix in the chest with his fist which rendered him unable to breathe. Immediately thereafter, Rosado took Onix by the shirt, raised him in the air and threw him against the wall, which caused him to cut his forehead and bruise his faced. Onix was at all times, during Rosado's aggression, handcuffed in the back and unable to defend himself. At some point, other policemen became aware of the aggression and drove Onix to the hospital with an open head trauma, which required suture and thirteen stitches, leaving a scar in Onix's face.

**Applicable Law and Analysis**

*Pedro Toledo, Head of the Puerto Rico Police Department*

Plaintiffs brought Toledo as a co-defendant in this case, alleging that "as the Superintendent [of the PR Police Department, he], is responsible for adopting and implementing the rules and regulations for conduction investigations and issuance of tickets for traffic violations and arrests[; and] as the maximum authority in [the Department], is the person ultimately responsible for adopting and implementing all the personnel regulations for hiring, training, performance evaluation, violations, disciplinary procedures, reprimand, and firing of all the police workforce, including the avoidance of violent acts in the performance of their duties..." See, Docket # 1, ¶ 28. The complaint further contends that

---

[1] The alleged violations are: to drive without a driver's license, failure to wear a seat belt and having the car's rear mirror broken. Although these violations are apparently disputed by Plaintiffs, the veracity or falsity of these violations are irrelevant to the discussion.

**Civil Case No. 06-1400(SEC)** 4

Toledo failed to regulate, and/or to train the police officers regarding the use of violence in the course of an arrest, and/or to supervise them to ascertain that they complied with these regulations.

Plaintiff's complaint lacks specificity as to Toledo's participation in the violation of Onix's constitutional rights to be free from police brutality. Toledo has moved to dismiss all claims on the following grounds: (1) Co-Plaintiffs other than Onix lack standing to sue under 42 U.S.C.A. § 1983; (2) there is no supervisory liability pursuant to that section; (3) Toledo is entitled to qualified immunity; and (4) pendent state law claims must be dismissed.

We start with bedrock. In order for a plaintiff to have a viable claim under section 1983, he must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. See, Gutiérrez v. Cartagena, 882 F. 2d 553, 559 (1st Cir. 1989). The second prong of the inquiry is two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation. Id.

The first element (acting under color of state law) has not been disputed by either Defendant, and it is apparent from the complaint that all the appearing defendants were acting under color of state law. However, Plaintiffs' claims against Toledo fail to overcome a few hurdles. First, as Toledo correctly notes, Plaintiffs other than Onix have no viable claim under section 1983 as they do not claim that **their** constitutional rights were violated, but only that they have suffered damages for the violation of **Onix's** constitutional rights. Although we understand that Co-Plaintiffs Damaris Matos and Ramón Marcano may have suffered significant mental anguish as a result of Onix's injuries, these damages were not caused by a deprivation of their own constitutional rights, but of Onix's. See, Soto v. Flores, 103 F. 3d 1056, (1st Cir. 1997)(stating that although plaintiff suffered mental anguish as a result of her son's death, which was caused by defendants' violation of the deceased's constitutional rights, "[t]he question is not one of a degree of suffering, but whether the

**Civil Case No. 06-1400(SEC)**                                                                                       5

plaintiff can establish a violation of a federal right[; w]hile [plaintiff's] loss was of enormous, heartbreaking magnitude, the Constitution does not protect against all harms. She herself was not deprived of a constitutionally protected interest, and she may not bring a section 1983 due process claim..."). As such, Co-Plaintiffs Damaris Matos' and Ramón Marcano's claims against Toledo are hereby **DISMISSED.**

Onix's claims against Toledo, *albeit* for different reasons, necessarily suffer the same fate. The law in this Circuit is clear that a superior officer, such as Toledo, "cannot be held vicariously liable under [section 1983] on a *respondeat superior* theory." Maldonado v. Castillo, 23 F. 3d 576, 581(1st Cir. 1994). A supervisor can only be held liable for his own acts or omissions. Id. That is, in order for supervisory liability to attach, a plaintiff must allege that the supervisor's behavior demonstrates deliberate indifference to conduct that is violative of his constitutional rights and that this conduct was affirmatively linked to the subordinate's violative act or omission. Id., at 582. In other words, there is an element of deliberate indifference and one of causation. The "causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights... if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." Id. The necessary nexus may be found also if "there exists a widespread abuse sufficient to alert a supervisor to ongoing violations[, to the extent that] the supervisory is on notice and fails to take corrective action, say, by better training or closer oversight." Id. Furthermore, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Id.

Finally, in order to find that a supervisor showed deliberate indifference, there must be an allegation of: (1) a grave risk of harm, (2) the supervisor's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. Robles v. Hoyos, 151 F. 3d 1, 7(1st Cir. 1998). In other words, it is "required that the supervisor had 'overtly or tacitly approved of, or purposely disregarded the conduct." Rodríguez Vázquez v. Cintrón, 160 F. Supp. 22d 204, 211(D. P.R. 2001), citing, Lipsett v.

**Civil Case No. 06-1400(SEC)**                                                                                                                                          6

Univestiy of Puerto Rico, 864 F. 2d 881, 902-903 (1st Cir. 1988). In this regard, "an important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned ... or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens." Rodríguez-Vázquez, 160 F. Supp. 2d at 211.

Onix's complaint is completely devoid of allegations from which the Court can infer that Toledo was on notice of the officers' illegal conduct, that this conduct created a grave risk of harm for citizens, and that, even then, Toledo failed to take measures to address the risk. The only allegations made against Toledo are conclusive in nature, *i.e.*, that he failed to create a policy for arrests that was consistent with the constitutional rights of Plaintiffs, and/or that he failed to train the officers, and/or that he failed to supervise them to ensure compliance with the policy. We conclude, as we have in similar cases, that Onix's "factual allegations are poor and insufficient to establish all the elements of his claim against Toledo." Rodríguez-Vázquez, 160 F. Supp. 2d at 212. The lack of specific allegations that link Toledo to the officers' malfeasance impede us to conclude that his conduct showed deliberate indifference for Onix's constitutional rights as it is required to hold Toledo liable under section 1983. In light of the above, Onix's section 1983 claims against Toledo are hereby **DISMISSED.**

Because the remaining claims against Toledo, to wit, those under Article 1802 of the Puerto Rico Civil Code, were brought pursuant to supplemental jurisdiction, having dismissed all federal claims against him, the Court will also dismiss the pendent state law claims. Exercising jurisdiction over pendent state law claims once the federal law claims are dismissed is discretional. See, Newman v. Burgin, 930 F. 2d 955, 963-964 (1st Cir. 1991)(holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit...[and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants,

**Civil Case No. 06-1400(SEC)**                                                                                              7

and comity). As such, all state law claims against Toledo are **DISMISSED WITHOUT PREJUDICE.** Because we have dismissed all claims against Toledo, we need not address his arguments regarding qualified immunity.

*Agent Juan C. Mariani and David Rivera*

Plaintiffs also aver that Rosado's confrère, officer Mariani, and Rosado's supervisor, Rivera, are liable under section 1983. Plaintiffs allege that Mariani was present at the time of Onix's arrest, at which point Rosado used excessive force (*i.e.* violently taking him out of the car and throwing him against the car to handcuff him), and did nothing to stop this conduct. Although the complaint also alleges that Onix was beaten again by Rosado once in the police station, Plaintiffs do not allege that Mariani was present at that point. Therefore, we must conclude whether Plaintiffs' only averment against Mariani is sufficient to survive Mariani's motion to dismiss, taking into account the standard for motions to dismiss and the rule that in a section 1983 claim, an officer is liable for his own actions. Castillo, 23 F. 3d at 581. Let's see.

Mariani raises three arguments in support of his motion to dismiss: (1) that he was not present at the time when Marcano was beaten, and could not have prevented the attack, (2) that there can be no supervisory liability as to him, and (3) that he is entitled to qualified immunity, because "[a]t all times, Agent Mariani acted accordingly (sic) to the law, in good faith and within the scope of his duties. The contrary, has not been proved (sic) by the plaintiffs." See, Docket # 59, p. 18. In support of this last argument, Mariani makes reference to a series of statements allegedly made by the Plaintiffs in their depositions. Co-defendant Mariani's arguments are misplaced. At the motion to dismiss stage, the relevant question is not whether Plaintiffs have provided evidence in support of their claim, but if the allegations made in the complaint present a "plausible entitlement to relief."[2] See, Margo

---

[2] It should also be noted that Mariani's motion cannot be converted to a motion for summary judgment, as it does not comply with Local Rule 56.

**Civil Case No. 06-1400(SEC)**                                                                                                          8

Caribe, -- 2007 WL 1732883 at * 2.

First, we conclude that Plaintiffs have plead enough to present a plausible entitlement to relief under section 1983 and the elements of supervisory liability. Plaintiffs do not contend that Mariani himself took affirmative action during the beating. Their only contention is that at the time of Onix's arrest he did nothing to stop Rosado's use of excessive force. See, Docket # 1, ¶ 12. Although Mariani was not Rosado's supervisor, but his fellow officer, we believe that the principles of supervisory liability apply equally in this context, inasmuch as Plaintiffs seek to impose liability in a person other than the aggressor.[3] As such, we must determine whether Mariani's inaction showed deliberate indifference for the violation of Onix's constitutional rights and whether this inaction was substantially linked to said violation. See, Castillo, 23 F. 3d at 581. The First Circuit has stated that there is a potential basis of liability in this context: "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." Gaudreault v. Municipality of Salem, 923 F. 2d 203, 207 (1st Cir. 1990).

In Gaudreault a citizen sued four unidentified officers, other than the plaintiff's assailant, who were present at the time of the assault but who did not participate actively in it. Although the Court recognized that there was a potential basis for liability against the non-assailant officers, since the complaint stated that the assault was over in a matter of seconds, the Court concluded that the officers had "no realistic opportunity to prevent an attack" and, therefore, could not be held liable. Id., see also, Hathaway v. Stone, 687 F. Supp. 708, 712 (D. Mass. 1988)("assuming Officer Stone was using unconstitutionally excessive force, Officers Baird and Reed may be held liable if they were present when the plaintiff was beaten, they knew that such force was being used, and they failed to stop Officer Stone from

---

[3] See, Camilo Robles v. Hoyos, 151 F. 3d 1, 6-7 (1st Cir. 1998)(stating that the word supervisor is "defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior").

**Civil Case No. 06-1400(SEC)**                                                                                                          9

using such force."); Calvi v. Knox County, 470 F. 3d 422, 428 (1st Cir. 2006)("a bystander officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for failure to intervene."); Davis v. Rennie, 264 F. 3d 86, 98 (1st Cir. 2001)("police officers have a duty to intervene when they see another officer use excessive force against a pretrial detainee.") This line of cases show that Plaintiffs' allegations set forth a plausible entitlement to relief against agent Mariani.

Mariani's contentions that he is entitled to qualified immunity because the only time when he "was directly involved was at the time of the arrest, which was done in accordance with the law", see, Docket # 59, p. 17, cannot aid him in the motion-to-dismiss stage, as the reasonableness of the force used in the arrest is a fact-dependent issue. At this point we only consider Plaintiffs' allegations as recited in the complaint, and cannot take at face value Mariani's contentions as to the reasonableness of the arrest. This precludes us from considering Mariani's argument that he is entitled to qualified immunity. For Mariani to be entitled to qualified immunity he must show: (1) that the asserted right is not clearly established or (2) that his conduct satisfies the test of objective legal reasonableness. Hoyos, 151 F. 3d at 5. It is clear beyond peradventure that "[t]he right to due process law (and, by extension, to be free from police brutality) is... clearly established under the Fourteenth Amendment." Id, at 6. However, this does not end the inquiry as to the first element of the qualified immunity question. Because Mariani was not the officer who assaulted Onix, to solve the *clearly established right* prong, we must also determine whether it was clearly established that an officer present at the time of the assault could be held liable for the constitutional violations perpetrated by his fellow officers. Id. (stating that it must be determined, for qualified immunity purposes, if it was clearly established by law that a supervisor could be held liable for his subordinates' malfeasance). As shown by the line of cases previously cited, we conclude that this potential liability was clearly established at the time the events underlying this complaint took place.

**Civil Case No. 06-1400(SEC)** 10

As for the second part of the qualified immunity question, it is impossible at this stage of the proceedings, where all that the Court has before it are the initial pleadings and the pending motions to dismiss, to conclude that Mariani's conduct satisfies the test of objective reasonableness. Mariani's unsupported conclusion that the arrest was reasonable is not enough to controvert the well-pleaded facts contained in the complaint. The reasonableness of the use of excessive force during an arrest "must be viewed from the perspective of the officers at the scene, the circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of other officers or others, and whether he is actively resisting arrest...." Dean v. City of Worcester, 924 F. 2d 364, 368 (1st Cir. 1991). There is nothing of evidentiary value in the record to put Onix's arrest into perspective and which would allow the Court to make a determination regarding the reasonableness of Rosado's use of excessive force. Furthermore, although Mariani would not be liable for Rosado's malfeasance if he had no reasonable opportunity to prevent it, Mariani has not alleged this and the Court lacks the necessary elements to make that determination at this point. Mariani's motion to dismiss is hereby **DENIED.**

We now turn our attention to Rivera's arguments in support of his motion to dismiss. As Mariani, he alleges that supervisory liability cannot be found in this case, and that he is entitled to qualified immunity. As stated above, Rivera was, at the time of the events, Rosado's supervisor. Plaintiffs' complaint alleges that he is liable to them because he "was aware of the illegal conduct of the codefendants (sic) and did nothing to stop it." See, Docket # 1, ¶ 30. They further aver that Rivera was in charge of training and supervising the defendants and implementing the applicable regulations. As previously discussed, a supervisor cannot be held liable under a *respondeat superior* theory; however, liability may attach if the supervisor incurred in deliberate indifference regarding its subordinate's unconstitutional conduct. Plaintiffs must also establish the necessary nexus between a deliberate indifference from Rivera and the constitutional violation. This nexus can be established if "the supervisor knew of, overtly or tacitly approved of, or purposely

**Civil Case No. 06-1400(SEC)**                                                                                              11

disregarded the conduct." <u>Castillo</u>, 23 F. 3d at 582. <u>Id</u>. A "causal link may also be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." <u>Id.</u> Plaintiffs have alleged that Rivera knew of the defendants' illegal conduct. Although they do not specify at which point Rivera learned of this conduct, the fact that they alleged that he "did nothing to stop it" can be reasonably inferred to mean that he was present during one of the beatings, that which took place at the station, and failed to take corrective action. We could further infer that he knew of Rosado's track record of violations and he failed to take measures to prevent him from incurring in further constitutional violations. As such, Plaintiffs have pled enough to present a plausible entitlement to relief against Rivera on supervisory liability grounds.

Furthermore, we cannot conclude, at this point, that Rivera is entitled to qualified immunity. First, as we already stated, the right to be free from police brutality is a constitutional right clearly established by law. It is also clearly established that a supervisor may be held liable for his subordinate's unconstitutional conduct if his own actions or omissions show a deliberate indifference "to conduct that is itself violative of a plaintiff's constitutional rights." <u>Castillo</u>, 23 F. 3d at 582. This is also true even if the supervisor lacks actual knowledge of the censurable conduct, if he "would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it" but did not. <u>Id</u>. On the other hand, it remains to be seen whether Rivera's omissions were objectively reasonable. However, as we concluded before as to Mariani, the record does not allow for such a determination at this point. We are not saying that Mariani or Rivera are precluded from raising this defense later on; however, at this stage the Court is unable to conclude that they are entitled to qualified immunity. Taking Plaintiffs' allegations as true, as we must when ruling on a motion to dismiss, we conclude that they have plead a plausible entitlement to relief under section 1983 against Rivera. Rivera's motion to dismiss is hereby **DENIED.**

**Civil Case No. 06-1400(SEC)** 12

The Court notes that the deadline for motions for summary judgment has now elapsed and that the parties failed to file an extension of time to do so. As such, the Court hereby ORDERS the parties to file a **JOINT Proposed Pretrial Memorandum,** which complies with the Court's Case Management Memorandum (Docket # 13), **by August 10, 2007.** A Pretrial and Settlement Conference is also set for **August 16, 2007 at 2:30 P.M**. Thereafter, the Court will set this case for trial.

**Conclusion:**

In light of the above discussion, Toledo's motion to dismiss (Docket # 23) is **GRANTED** and Mariani's and Rivera's like motion (Docket # 59) is **DENIED**. Plaintiffs' claims against Toledo are **DISMISSED**. Partial judgment will be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of August, 2007.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
S/U.S. *Salvador E. Casellas*